and Mr. Tutte. You may proceed. Thank you, Your Honor. Andrew Tutte for Appellant Gorgi Talevski, and may it please the Court. Section 1983 creates a private cause of action against any person who undercuts or deprives another of any rights secured by the laws of the United States. The Federal Nursing Home Reform Act, FINRA, in 42 U.S.C. section 1396R, paragraph C, confers two key rights on nursing home residents enforceable under that statute. First, in 1396R, paragraph C1A, Little Roman II, the FINRA creates a right not to be restrained through the use of powerful antipsychotic drugs for purposes of discipline or convenience, not to treat an individual's medical symptoms. Second, in 1396R, paragraph C2, the FINRA creates a right not to be discharged from a nursing home, except in narrow circumstances, not at issue in this case. Those rights are enforceable in actions under 1983 for three reasons. First, Mr. Tutte, this is Judge Wood. Before you get into that, I understood from both your opening brief and even more particularly your reply brief that your argument before this Court today is limited to those two rights that you just described and that you aren't trying to say that every single part of this patient's Bill of Rights is privately enforceable under 1983. Yes, Your Honor. This Court would only pass on those two rights. And if other rights may or may not be enforceable, we would ask that the Court not take a view on any other rights, so not say that those were conceded. We think that because the complaint was dismissed in its entirety, you would just reinstate the complaint because at least two rights were stated. But we think that given the facts in the complaint, all the relief we seek can be obtained just through a finding of enforceability of those two rights. Okay, thank you. Yes, Your Honor. So we think the plain text of the FINRA creates mandatory rights on its face and that that should be the end of this case. It unmistakably confers rights and says that those rights must be enforced. Second, these rights are enforceable under the traditional test that this Court applies from blessing. The blessing test has three factors, all three of which are overwhelmingly met in this case. And I apologize, I have an alarm going off. I hope that the Court can still hear me. First, the right is unambiguous and unambiguously confers a right on individuals using rights conferring language. Second, the rights are not too vague to enforce. And third, the rights are mandatory, not precarious. And that's actually conceded. So the only two points at issue are whether the rights are... Mr. Tutt, do you want to take care of your alarm there? Yeah, I apologize. It's a building alarm that is going on behind me. And I'm not sure how bad it is from the Court's perspective. It's just stopped. I so apologize. Go ahead. I beg the Court's indulgence. Thank you very much. The statute is clearer than the three statutes that this Court has found to confer enforceable rights in Bontrager, in Planned Parenthood, and in B.T. Bourbonnet. Those statutes used the exact same grammatical structure that this one does. They said that state plans must and then either provide for notice and comment or give an individual the ability to use any qualified provider. They didn't even use the word rights. This statute is even clearer. It uses the word right to describe the rights it confers. It says it in many places. It says it in the title of the statute. It says that the rights must be protected and promoted. And then, just to make it even clearer, it says in each instance in which it confers a right that that right is a right. So it says the right to be free from chemical restraint must be protected. So Mr. Tutt, let me just jump ahead. I know there's a certain sequence to the argument to go through the rights. But there are two things I want you to talk about. One of them is the fact that although the Supreme Court has certainly recognized when these criteria are met that there are certain spending clause statutes that give rise to privately enforceable actions, we know it's cautioned us to be careful when we infer such an action. So I want you to talk about that broad picture. And the second thing I'd like you to address is the argument that your opponent makes that there is, in fact, a comprehensive enforcement scheme under this statute. And so we don't need to overlay a private right of action found under 1983 on top of that enforcement scheme. Yes, Your Honor. So let me take those each in sequence. So the first question is what about, I take it to be the Gonzaga case that says that it must use unambiguous rights-creating language to confer a federal right. We think that this case easily meets the criteria that Gonzaga set forth. If you look at the statute at issue in Gonzaga, it was an instruction to the Secretary of Education to withhold funds when schools had policies that were out of compliance with FERPA's requirements, the Federal Education Rights Privacy Act, Student Rights Privacy Act. And it said that it was two steps removed from conferring a federal right because it was merely an instruction to the Secretary, and it didn't require enforcement every time there was an instance of noncompliance. Instead, it was aggregate and only applied if you had a practice or policy of not complying. Under that logic, here we are zero steps removed. The statute says that the nursing home must protect, must protect the rights of the individuals, and that every time an individual's rights are violated, that constitutes a violation of the statute. So rather than being an instruction to protect a right, and rather than applying only when in the aggregate and only for policies of noncompliance, it is violated every time a right is violated. So under even the analysis of Gonzaga and just under the language of what it describes as the statute must be rights conferring, we think that we meet it. And I'll go to the second point. On the second point about whether or not there's a comprehensive remedial scheme, there isn't a comprehensive remedial scheme in the FINRA of the kind that the Supreme Court has held would impliedly preclude access to Section 1983 relief. Even if there wasn't a savings clause, and I want to make use of the savings clause because we think it's conclusive as well, but even if there wasn't one, the statute doesn't ever give individuals the right of access to a federal court. In all the cases, as Justice Alito said in the Fitzgerald case describing the Supreme Court's prior cases, Section 1983 is precluded in a statutory scheme where the ultimate, where there is an ultimate recourse to federal court. And the reason would be that that's an implied repeal of 1983, which would allow you to skip to the front of the line. Well, so you're describing there the sea clamors kind of situation where there is a fairly elaborate set of prerequisites too before you get into court. Yes, Your Honor. That's exactly right. And we think it's even more powerful that the Supreme Court has now recognized that that's the appropriate analysis and that if there isn't a set of elaborate prerequisites before going into federal court, that under that Fitzgerald case sort of means that they didn't intend to preclude it, which as we note in our brief is consistent with the idea of implied repeals being disfavored. Section 1983 is a cause of action. It gives a right to bring a cause of action in federal court whenever a right has been deprived. And here we have the conferral of rights. And so it would be unusual for a statute to impliedly preclude access to that unless it was extremely clear that it intended to do so. And turning to the savings clause, in case there was any doubt, the savings clause in this case says that it should, it's a clause, it says that it should not be construed as limiting such other remedies. And C. Clamors did have a savings clause to be sure, but it was worded differently and it was worded differently in relevant respect. In C. Clamors, they were trying to say that because there was a savings clause, even though the citizen's supervision allowed you to go to federal court to enforce the right, the savings clause meant you could go to federal court and enforce more of the rights in the same statute. And the way the savings clause was worded showed that that simply was not the case. Here, it looks like it's almost exactly on point. It says there might be other federal remedies, probably not in FINRA, and then it wants to preserve access to those federal remedies. So we think that this is exactly the instance in which the savings clause would actually be operative when preserving access to an other federal remedy. Mr. Tudge, isn't it the case, though, that we, I mean, I think we got to be a little careful in this area with putting too much weight on the savings clause. Can't we more along the lines of the question that Judge Wood was asking you? Just look at the way, as Justice Alito described it for the court in Fitzgerald, the court has drawn the lines in these areas. C. Clamors, Smith, Rancho, Pelos, Verdes, and say here you don't even have a situation where there's any cause of action created in federal court at all. All you have are different forms of administrative relief, and that takes you out of the kinds of interference with Section 1983 that the court has concerned itself with in the cases in this area. Yes, Your Honor, and just to agree with you even more strongly, the touchstone is congressional intent, and we think that the structure, as the court has noted, shows that no intent to preclude Section 1983 relief, and that the savings clause is just more evidence of sort of that intention in case they weren't clear, belt and suspenders. And so we think that it's appropriate for the court to put the weight that persuasive in this case. I want to just turn to the fact that this court, every court of appeals to have analyzed these rights and the enforceability of these rights under Section 1983 has concluded that Section 1983 gives an enforceable right. The Ninth Circuit in the Anderson versus Ghali case, and the Third Circuit in the Grammer case, and this court cannot affirm the judgment below without opening a square circuit split with those circuits, especially the Third Circuit, which is really the mirror image of this case, where an individual died in a nursing home and a survivorship and wrongful death action was instituted under Section 1983 to enforce the exact provisions of the FINRA at issue here, especially the chemical restraint provision. And the Third Circuit held that it was an enforceable right and went through the blessing factors and said that they were all met. So we think that that court's analysis is persuasive and it matches this court's analysis in its Section 1983 cases and that this court can follow that case and simply join the circuit consensus rather than sort of departing from the consensus of the circuits. I'd like to just turn to the question. I'd like to first, if the court has any questions about the statute of limitations, I would like to address them. If not, I'd like to turn to whether this will disrupt state medical malpractice claims. We think that that's the wrong analysis, but we also think that it won't. So first on the wrong analysis, the conferral of a federal right is not meant to mirror common law rights and rights of action in state court. As I think it was Justice Powell in the Wilson against Garcia case pointed out, any mirror image or any relationship analogy between a federal right and a state law cause of action is purest they're meant to enforce different things and vindicate different interests. Excuse me, Mr. Tutte. So you make the point in your briefs that on the federal side, we're talking about an intentional tort. We don't have a 1983 problem until there's intent. So in that sense, it wouldn't be as easy to show a federal violation as it would to show negligence under In Indiana, like many states, of course, has a fairly well thought out and elaborate medical malpractice regime. But you're saying that standard of care and all the rest of that isn't really the same question as I understand it. And that's our other very powerful point, which is that this is serious misconduct, what occurred in this case. Mr. Tulesky was the victim of intentional actions, the use of drugs off-label to restrain him for the convenience of the nursing home. Congress had seen that this was a problem and- I mean, let me just say, allegedly, we're at a very early stage here. And if this were to move forward, it may well be that the home could show that that had not happened. I just don't want to go too far. Yes, Your Honor. And I mean that only in the context of the complaint being read in the light most favorable to us. You're right. And so, but our allegations are very serious. And the fact that this conduct is intentional really distinguishes it from medical malpractice. And the amicus brief from the healthcare associations that says that providing Section 1983 enforcement would essentially open the floodgates and create unlimited liability simply doesn't ring true when the fact is that all of these cases involve intentional misconduct. So would you agree that a simple mistake in judgment about whether one of these sedatives was necessary would not meet the Section 1983 claim? Yes, Your Honor. We would say that it has to be that it was done with the purpose of disciplining or with the purpose of conveniencing the nursing home. It must be intentional. And I would also just like to close by saying that Section 1983 has a real role to play just because it is difficult to sue state-owned nursing homes in Indiana. There is a notice of claims process that makes it a very short window in which to give notice before instituting a lawsuit. And there are other procedural obstacles that Section 1983 gives victims the opportunity to overcome in instances of egregious misconduct like what we allege occurred in this case. If the Court has no further questions, I'll reserve the balance of my time for rebuttal. Thank you, counsel. Mr. Robbins? Thank you, Your Honor, and may it please the Court. Larry Robbins for appellees. In our view, the Court need not reach the implied right of action, the Section 1983 issue in this case, because under this Court's decision in Dixon v. Kranz, it is without question the case that these claims are time-barred. Now, Mr. Robbins, I thought you were going to look at it, too, you. There are instances, certainly, in which the face of a complaint can show that it is actually time-barred, and so this Court has allowed the district courts to short-circuit the process of raising an 8C defense in an answer and has allowed this to be adjudicated on a 12B6. However, it has to be unequivocal, and there's at least one theory to which Mr. Tutte has alluded that in no way appears in the face of the complaint, and that's the theory that each time Mr. Tlefsky was administered some, I'm going to call them sedatives, you know, some sort of drug to chemically restrain him, there's a new violation. And I don't know that simply reading the file on one occasion should debar somebody from complaining about later administrations of medication. That theory may be a good theory or it may be a bad theory, but it's the kind of theory that had the State properly raised limitations in an 8C, the plaintiff would have had an opportunity to come back, perhaps there would have been summary judgment proceedings, perhaps facts would have been found. So this case strikes me as a bad candidate for simply short-circuiting all of that process. Your Honor, I would agree if I thought that that inquiry were material, but in point of fact, the complaint on its face tells us that the last time this plaintiff could have been the subject of improper chemical restraints was when he was transferred for the last time. There were no more chemicals after he was gone. And the complaint tells us that he left for the last time more than two years before this claim was brought. So I take Your Honor's point, but I don't think it moves the needle because the fact remains that on the face of this complaint, both of these claims, both the transfer claim and the chemical restraint claims accrued more than two years before this claim by his family was brought. But of course, you do also have to were applicable, Judge Wood. But I don't know why you drag in the medical malpractice statute when you would be the first to argue that the standards for medical malpractice are insufficient to make this claim. It's exactly the same argument that the state makes when a case is brought under the Eighth Amendment about bad medical care in the prisons. We say repeatedly, mere medical malpractice isn't enough to show an Eighth Amendment violation. And I would say by the same token, mere medical malpractice isn't enough to show the alleged violation here. Forgive me, Your Honor. I think that misreads the meaning of this court's decision in Dixon, which I submit is on all fours. It is not subject to any distinction that I can find. I'm not sure about that situation. Yes. But I wonder if I could just explain why that's true. But I don't want to leave dangling the direct answer to Your Honor's question. In Indiana, the medical malpractice statute covers any claim against a health care provider arising from the provision of professional services. It's sometimes called colloquially medical malpractice. But as the cases like AGM and Popovich and other cases cited in our brief explain at great length, the statute has the broadest compass. By its text, it tells us that it covers any claim against a health care provider, such as my clients, indisputably, arising from professional services, as all these claims do. As for... I don't see how Indiana can define a way of federal claim. Well, Your Honor, I don't. Respectfully, I think that's what the plain meaning of Section 1988A of Title 42. 1988A tells federal courts that when you are adjudicating federal civil rights claims, and there is a gap, as everyone concedes there is in 1983 for post-1990 statutes, there's no statute of limitations. So you look to the relevant state law. And in that respect, Judge Wood, states are forever defining the content of federal statutes. Well, only in the sense that we look at the most... Right. We look at the most analogous thing. But this is a complex area. The state sets the measure of it. The state sets tolling. Federal law sets accrual. There are a number of interactions between the federal and the state regime. Indeed. But just to complete the point, and then I do promise to turn to the 1983 issues. In this court's decision in Dixon, the question was whether a claim, in that case by a prisoner, was timely. A 1983 claim. The 1983 plaintiff invoked Illinois' version of Indiana's legal disability provision. That is to say, in Illinois, at the time, it covered prisoners during the period of their incarceration. But there was a carve-out under Illinois law for claims against Department of Corrections officers. Exactly. Just as there was a carve-out in Indiana for claims against healthcare providers arising from the provision of professional services. And what this court said, and this is the crucial point. What this court said in Dixon is this. Unless there is a tolling provision that is designed specifically for personal injury claims, you must take the law as you find it. And you can't unravel it. And you can't just take the sweet without the bitter. And what the court said is, here, you're taking a general tolling provision. It isn't specific to personal injury claims. It covers all claims. It is what I would call a generic tolling provision. Just as in Indiana, the legal disability provision is a generic tolling provision. It, too, is not designed specifically and doesn't apply only to personal injury claims. It's generic. Just as in Dixon. And what the Dixon court said is, when you're dealing with this kind of generic tolling provision that is not designed specifically for personal injury claims, you have to take it with all of its consequences and all of its carve-outs. Now, 1988a tells us that if the carve-out somehow offends federal law, you don't apply it. I grant that. And in Dixon, the court went on to say that the carve-out for Department of Corrections officers does, in fact, offend 1983 policy. No such claim is being made here. The only claim that's being made here is that the carve-out somehow doesn't apply because this is not truly a medical malpractice case. But that simply misapprehends the capacious dimension of the medical malpractice carve-out, which Dixon tells us must be applied. So, my submission... No, I certainly see your argument. I mean, there are a couple of key moves that you make, but that's all right. I think I understand where you're coming from. Yes, I realize that there are a couple of pieces, but ultimately they boil down to just two. There's a federal statute that tells you how you're supposed to act as a federal court. No, you're saying that no matter what these medical people are doing, you know, they're deliberately inducing a coma because the person is annoying or whatever, that that somehow arises out of their medical activities. And I think you're making an assumption that's not well-based under this statute. The whole point of this statute is that they're not engaged in medical activities when they are simply, you know, I'm being a little extreme here, but I hope they're just disabling the person, just like you might disable somebody by swatting them in the head. Again, Judge Wood, I would refer you to the line of medical malpractice cases in Indiana that give content to this carve-out. And you will find that the cases say that everything from assault and battery to any other intentional tort and contract and other breaches, so long as they arise from the professional services... And that's the key. Does it arise from professional services if the person isn't behaving as a professional at that point? Well, there's no allegation in the complaint, mind you, which is, of course, the operative document that these folks somehow stepped out of their role. There is a case in the Ninth... That is critical. You would agree that that would be critical. Well, you know, if it were something like the Ellis case in the Ninth Circuit where the doctors were basically adjuncts to law enforcement pumping somebody's veins to produce evidence of drug abuse or alcohol in connection with a traffic fatality, why then, you know, the doctor is a cop and not a doctor? That's not our case. This... And I'm gonna... I now see my time is I would suggest that under the force of 1988-A, you are required to look to state law unless it offends federal policy. That's the plain language of 1988-A. It is dispositive... It was dispositively construed in Dixon, and I don't see any daylight, none, between Dixon on the one hand and this case on the other. Mr. Robbins, just one quick question from me. Yes, Your Honor. Would you agree that our consideration of the statute of limitations issue as an alternative ground, in your view, on which to affirm is at our discretion? Yes. Okay. I would, but can I... If I can just... If you'll bear with a somewhat longer answer now that I... Yes, the answer is you have the sensible to exercise that discretion, Judge Scudder, in this case. Just two months ago, a panel of this circuit in the Nozzello case, an opinion on which Judge Caney was a member of that panel, held as that for all intents and purposes, we're not going to create any new 1983 or private right of action cases and spending clause cases. We're getting out of the business of doing that because the Supreme Court has gotten out of the business of doing that ever since Wilder and Virginia Hospital Association and the earlier case. Other than those two cases, the Supreme Court's gotten out of the business. My point, Judge Scudder, is this. There is some flux in this circuit now as to whether spending clause cases can any longer give rise to enforceable claims under 1983. Mr. Robbins, we can't overrule the Supreme Court. Now, certainly the Nozzello case takes a cautious approach to this but then has no trouble saying that under ordinary law, there is no action here because their grievance, as the court says, concerns not the time of the benefits but the amount of the benefits and that's simply not a claim. We have found, as have other circuits regularly, the there is something left of this. If we threw out spending clause altogether, there are Supreme Court decisions in Title IX that would be bad. There are Supreme Court decisions in Title VI that would be bad. I think you're pushing too hard. If the Supreme Court decides to take that step, then, of course, we'll follow it but it hasn't and it doesn't seem that disturbed by Court of Appeals decisions that are attempting to follow Blessing and Gonzaga. I'm not suggesting that this court should abandon its precedent. I'm suggesting instead in answer to Judge Scudder's question that given what I take to be the disagreement between Nozzello and those other three precedents and by the way, Judge Wood, Nozzello has two different parts. It construes two different provisions. The one that Your Honor just adverted to, it's true, they interpreted to not cover the plaintiff's claim. The former provision, they said, could not give rise to enforceable rights because that's a function for Congress in spending clause statutes now and forever. So, all I'm suggesting is that because there is some disagreement within the circuit and easier... You are overstating that, I think, really significantly. I'm not sure. If there really were disagreement within the circuit, there would have been a circulation under our Circuit Rule 40E and there wasn't. It's a careful line that needs to be drawn. Each consistent here. Well, in any event, I was trying to suggest and I understand perhaps Your Honor reads Nozzello differently from the way I do. In any event, I do think there are reasons apart from whether there is an intra-circuit disagreement. There are good reasons, I think, to avoid reaching out to decide a substantive question under 1983 when there is a simple and question under Dixon for the statute of limitations. But turning now finally to the 1983 claim, I'd like to just make a couple of very quick points. The first goes back to a point made by Judge Scudder when Mr. Tutte was speaking earlier. It seems to me that the fair reading of the Supreme Court's decision in Fitzgerald and this Court's elaboration of the point in Planned Parenthood is that the dividing line, to use the Fitzgerald Court's language, the dividing line between the cases in which remedies were thought to be sufficiently comprehensive to preclude 1983 relief and those in which it was not is whether there was a private remedy available. The plaintiff, Mr. Tlefsky, tells us it must be a private judicial remedy. I will acknowledge that in the three cases in which the Supreme Court has said the remedies are comprehensive enough, it so happens that there was an individualized remedy that you could go to court with. But what the Supreme Court in Fitzgerald and this Court in Planned Parenthood told us is the dividing line is whether there's an individualized private remedy, and I would suggest that the fair reading of Fitzgerald and Planned Parenthood and Rancho Palos Verdes as well is that the dividing is that where there is a comprehensive administrative remedy for individuals to take, that gives rise to a sea-clamor's preclusion. The other point I want to make because what is the, at the highest level of specificity, what is the individual administrative remedy that was available to Mr. Tlefsky here? They were both available and they were both invoked. Yeah, what's the content of them? There is an individualized administrative process for as we identify in our brief, in our bottom side brief. There is a grievance procedure for challenging the conditions of health care provision, including the use of chemical restraints. So what I worry about with that, Mr. Robbins, and I'm grateful that you got to this in your argument. What I worry about is that you and the health association, amici that filed the brief, the amicus brief, that you're approaching this question at too high a level of generality. You're saying, well, you know, there's a survey, there's surveys that are done and there's investigations that can be done and inspections and a range of remedies from fines to closure. What I worry about is if that's true, if it's those attributes that add up to a scheme, that all of that would have applied in our decisions in Bontrager, BT, Bourbonnais, and Planned Parenthood. Every one of those decisions are wrong on that prong of the analysis. I don't think so. To take, if I can look at Planned Parenthood, for example, the last one your honor mentioned, I direct your honor's attention to page 975 of the opinion in which the court said it would be a different matter if Congress had provided an administrative remedy for individual patients. There are administrative remedies for individual patients in FINRA. Not only that, the plaintiff used them. And I know my time is out and I hope... Counsel, I'm going to give you two more minutes so you may conclude with that. Thank you very much, Judge Canning. The last point I want to make is about the savings clause, because it's a red herring. In both C. clamors and Rancho Palo Verdes, there were savings clauses. What they said was, these are not, these rights prescribed here are not in derogation of rights you would in any other, in any statute, and it went on from there. And what the court said as to both of those savings clauses is, hey look, when you, they refer to statute, or as in our case, quote, federal law. They aren't talking about this very statute itself, or this very federal law itself, because after all... Why do you say that? It just says, in addition to those otherwise available under state or federal law, 1983 is a federal law. Yes, but 1983... It allows enforcement of, you know, since Maine against Thibodeau has allowed enforcement of federal law rights. Yes, Judge Wood, but it doesn't have content but for the fact that it is filled by an underlying federal statute. So what? I mean, isn't that what, you're reading a limitation in here. No, what I'm doing is I'm reading the plain language of the Sea Clambers and Rancho Palo Verdes that dealt with a substantially identical savings clause. And what they said is, a reference to a statute, to any statute, that was the word, those were the words, any statute, cannot mean this very statute, because after all, if it did, why not just put in an express cause of action? So too here, there's a reference to federal law. Now, Your Honor, you're right, 1983 is a federal law, but it would not give this plaintiff any rights unless it were derived from FINRA. So the question is, when FINRA itself makes reference to, quote, federal law, does it intend to include itself as the federal law? Because if it doesn't, and it didn't in Sea Clambers, and it didn't in Rancho Palo Verdes, if it doesn't include FINRA, then 1983 avails us nothing because it is not a source of substantive rights. It is simply a remedy for rights that can be inferred from some other text. Thank you, counsel. Thank you very much. I'm going to give you two more minutes, and then I'm going to turn it over to Mr. Tadd. Mr. Tadd, I'll give you an extra time from the court. Mr. Tadd, I'll give you an additional two minutes as well. You may proceed. Thank you very much, Your Honor. Let's begin there at the very last point about Sea Clambers and savings clauses, just so that it doesn't get lost, and then I'll move to the remaining arguments. Just read the savings clause in Sea Clambers. It says other rights are not restricted. Now read the FINRA savings clause. It says other remedies aren't restricted. Very different. I'm not trying to slice anything very thinly. We think that we win entirely on the structure of the statute and Congress's clear intent, but the savings clause here actually materially differs. It's preserving other remedies under federal law and other remedies under state law. In those cases, it's about preserving other rights, and it says the rights can't be the same statute in which the savings clause appears. I want to turn to this statute of limitations question very briefly. Opposing counsel, Mr. Robbins says that it's simple and dispositive. It is neither simple nor dispositive. Under Singleton v. Wolf, this court should not reach it at all. The court below thought that it wasn't appropriate to dismiss the complaint on these grounds, and in this posture and given the complexity of this issue, the court should simply not reach it. It's an alternative grounds for affirmance, and the court can simply reverse, and this can be litigated fully in the district court. But even if the court did reach it, I just want to point out that the arguments Mr. Robbins is making were the exact arguments rejected in Wilson v. Garcia, and in case there any doubt about that, just reading Justice O'Connor's dissent where she was very clear that the court was eschewing the practice of looking very closely at analogous facts and circumstances and was instead adopting a sweeping standard that would just look to the personal injury action, personal injury statute of limitations, no matter how general that might be. So we submit that this case is decided on Wilson v. Garcia and just importing the statute of limitations along with its tolling provision from personal injury actions. And unless the court has any questions it would like to explore on statute of limitations, I'd just like to turn once more to section 1983 and just say that, you know, opposing counsel barely reaches section 1983. We think that that's it's so overwhelmingly clear. We think it's because this court would have to open a circuit split with two sister circuits that both found it unambiguously clear. It clearly intended to benefit nursing home residents. It's clearly mandatory and it's clearly capable of federal judicial enforcement. We think that the court should find that there are at least two federally enforceable rights under section 1983 in the FINRA in reverse. Thank you, your honors. Thank you, Mr. Chet. Thanks to both counsel and the case will be taken under advisory.